STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF REGIONAL OFFICES
SUFFOLK REGIONAL OFFICE

January 26, 2026

Honorable Joan M. Azrack
United States District Court
Eastern District of New York
100 Federal Plaza, Courtroom 920
Central Islip, N.Y. 11722

Re: **Children's Health Defense, et al v. McDonald**
Docket No.: #: 2:25-cv-6877 (Azrack, J.) (Shields, M.J.)

Dear Honorable Judge Azrack:

I represent Defendant, Dr. James V. McDonald, the Commissioner of the New York State Department of Health ("DOH"), in this action filed by Children's Health Defense ("CHD") and 7 pseudonymous parents of 9 pseudonymous minor children (collectively, "Plaintiffs"), and I write in staunch opposition to Plaintiffs' request for what they term an "emergency" temporary restraining order ("TRO").

On December 15, 2025—the day this action was filed, and the same day that Commissioner McDonald was served—Plaintiffs notified both DOH and the Office of the Attorney General that they "anticipate filing an Emergency Motion for a Temporary Restraining Order (TRO) and Preliminary Injunction to prevent the imminent expulsion of minor children from school." See Dec. 15, 2025 Notice of Imminent Emergency Motion Letter, attached here as Exhibit A. No such application, however, was filed at that time. Instead, a week later, Plaintiffs advised that they were "currently reassessing the timing and necessity of a TRO/PI application." See December 22, 2025 email correspondence, attached here as Exhibit B.

As nothing further was heard from Plaintiffs about any such emergency motion, Defendant has instead handled this action in the ordinary course, seeking a pre-motion conference for a motion to dismiss Plaintiffs' Complaint. See DE 7 (setting out the factual background and complete absence of substantive grounds for Plaintiffs' challenge to Public Health Law § 2164, which will not be repeated at length infra). Now—***over a month*** after they first planned to seek exigent emergency relief—Plaintiffs have provided notice of yet another imminent and purportedly emergency TRO application, on essentially the same bases as those described in their original Complaint. Plaintiffs' application, however, is entirely without merit; and certainly does not need to be heard on an exigent basis.

In determining a motion for preliminary relief, three factors are considered by the court: likelihood of success on the merits, irreparable harm in the absence of an injunction, and the balance of equities weighs.

Daileader v. Certain Underwriters at Lloyds London Syndicate 1861, 96 F.4th 351, 356 (2d Cir. 2024). In circumstances, however, where a movant—such as Plaintiffs here—seeks a mandatory injunction altering the status quo rather than a prohibitory injunction, they are subject to a higher burden of proof, and must show both a "clear or substantial likelihood of success on the merits" and a "strong showing of irreparable harm." Id. (cleaned up). Here, Plaintiffs have not satisfied any one of the three prongs, let alone all of them, as is required to obtain emergency relief.

Starting with irreparable harm, as it is beyond cavil that this "is the *sine qua non* for preliminary injunctive relief," the moving party must demonstrate that this condition is fulfilled "before the other requirements for the issuance of [a preliminary] injunction will be considered." JBR, Inc. v. Keurig Green Mt., Inc., 618 F. App'x 31, 33 (2d Cir. 2015) (cleaned up). Here, Plaintiffs entirely lack irreparable harm for the following, non-exhaustive reasons:

*First*, notwithstanding their delay in filing the instant application discussed supra—which, standing alone, supports a finding of no irreparable harm, see Nat'l Prods. Ass'n v. James, 2024 U.S. Dist. LEXIS 105619, at *9 (E.D.N.Y. June 13, 2024) (Azrack, J.) (questioning irreparable harm where plaintiff had "months-long delay in bringing the instant application [for a preliminary injunction] (which the Court found troubling)," and then continued to wait before eventually filing the motion)—Defendant notes that it has been clear since **well before** this action was filed that Betsy Roe faced exclusion from school upon the expiration of her temporary medical exemption. Indeed, the Complaint itself alleges as much in ¶¶ 205–06, recounting that Roe would be excluded from school on January 20, 2026, as that was when her initial temporary medical exemption was set to expire.[1] Raphael Goe, in contrast, was removed from school in April 2025, **long** before Mahmoud v. Taylor, 606 U.S. 522 (2025) was decided or this action was commenced, see Compl. ¶¶ 169–177. As a result, there is simply no basis for Plaintiffs to run to this Court complaining of imminent irreparable harm, as this harm has either existed for months or has been scheduled to occur for months, and in response, they have deliberately chosen to do nothing in an improper attempt to manufacture exigency here.

*Second*, even setting aside that any exigency or purportedly irreparable harm arises solely from Plaintiffs' own choices, the very basis for Plaintiffs' claims in this suit further undercuts their arguments here. This is because to the extent that Plaintiffs attempt to tie their irreparable harm to alleged First Amendment violations, such violations purportedly exist solely as a result of the Supreme Court's decision in Mahmoud. Mahmoud, however, was decided on June 27, 2025; and unquestionably made headlines at the time the decision was issued. Yet, even though Plaintiffs base their entire Complaint on the legal theory derived from Mahmoud, they have chosen to wait approximately seven months before filing the instant application, bringing suit only after the Supreme Court directed further proceedings in Miller based on Mahmoud. Compl. ¶ 5. Such delay is telling, and again demonstrates that there is, in fact, no irreparable harm present here. See e.g. Citibank, N.A. v. Citytrust, 756 F.2d 273, 277 (2d Cir. 1985) (in seeking preliminary relief, "a moving party must act diligently to enforce his rights since delay undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable harm" (cleaned up)); McGregor v. Suffolk Cnty., 690 F. Supp. 3d 147, 154 n.6 (E.D.N.Y. 2023) (Brown, J.) (observing that plaintiffs' "inexplicable delay in waiting over seven months" from the onset of the purported constitutional violation was "sufficient to dispose of" application for a preliminary injunction).

---

[1] To the extent that this exclusion date has been pushed back further, upon information and belief such extension occurred because Roe submitted yet another request for a temporary medical exemption, and she was allowed to remain in school while that request was pending determination. Regardless, it has always been clear that such a request could be denied, and that even if it was granted, it would be explicitly temporary in nature; such that the purportedly irreparable harm Roe faces has been impending for months, and her failure to act sooner cuts sharply against her claims here.

*Third*, any potential harm faced by Roe and Goe is not attributable to the absence of a religious exemption in § 2164. To this end, the Complaint **explicitly alleges** that both Roe and Goe will be—or have been—removed from school because their medical exemptions were revoked, denied, or expiring.[2] See Compl. ¶¶ 169–177 (Goe's medical exemption was revoked on April 24, 2025, 9 months prior to the instant application—and he has been excluded from public school since May 2025); ¶ 205 (Roe's "temporary medical exemption [obtained] after testing positive for mononucleosis earlier this month" will "expire[] on January 20, 2026."). Thus, insofar as Roe and/or Goe may face injury, the mere existence of injury is not enough for a finding of irreparable harm; as instead, "the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." Mitchell v. Blain-Lewis, 2025 U.S. Dist. LEXIS 220945, at *22 (N.D.N.Y. Nov. 10, 2025) (cleaned up, citing, inter alia, Omega World Travel, Inc. v. Trans World Airlines, 111 F.3d 14, 16 (4th Cir. 1997) (holding that a preliminary injunction may not be issued to prevent an injury or harm which was not caused by the wrong claimed in the underlying action)); see also Williams v. N.Y. State Office of Mental Health, 2011 U.S. Dist. LEXIS 141891, at *3–4 (E.D.N.Y. Dec. 1, 2011). Here, because any forthcoming injury is not connected to the claims raised in this Complaint—which focus on the absence of a religious exemption from § 2164—such injury does not qualify as irreparable harm for purposes of a TRO.

*Fourth*, notwithstanding the dispositive points above, the mere "assertion of constitutional injury is insufficient to automatically trigger a finding of irreparable harm" in any event. Donohue v. Mangano, 886 F. Supp. 2d 126, 150 (E.D.N.Y. 2012). Rather, only where a constitutional injury is "convincingly shown" may a finding of irreparable harm be warranted. Id. And here, for the reasons discussed in DE 7, there is no constitutional injury at all; let alone a "convincing" one, such that Plaintiffs have not demonstrated irreparable harm. We the Patriots USA, Inc. v. Hochul, 17 F.4th 266, 294 (2d Cir. 2021) ("Although Plaintiffs are subject to meaningful burdens on their religious practice if they choose to obtain the COVID-19 vaccine, because they have failed to demonstrate a likelihood of success on their First Amendment or other constitutional claims, their asserted harm is not of a constitutional dimension."). And, for the same reasons, Plaintiffs have failed to demonstrate *any* likelihood of success on the merits of their claims; much less a "clear or substantial likelihood of success on the merits." See DE 7.

*Finally*, Plaintiffs cannot show that the balance of the equities tips in their favor either. In this respect, Plaintiffs improperly seek to focus on their own circumstances in an attempt to obfuscate the true effect that any injunction against § 2164 would have on the State's public health goals. In reality, however, while § 2164 may require Roe and Goe's exclusion from school, such exclusion is in furtherance of protecting the State's *entire population* from the spread of communicable, vaccine-preventable diseases.[3] See We the Patriots U.S. v. Conn. Office of Early Childhood Dev., 76 F.4th 130, 153 (2d Cir. 2023) (discussing Connecticut's interest in requiring vaccination, and explaining that "exempting religious objectors from vaccination would only detract from the State's interest in promoting public health by increasing the risk of transmission of vaccine-preventable diseases among vaccinated and unvaccinated students alike"). The balance of the equities, therefore, lies with the State's efforts on behalf of protecting the public health at large, and Plaintiffs' claims to the contrary ring entirely hollow. F.F. on behalf of Y.F. v. State, 65 Misc. 3d 616, 625 (Sup. Ct., Albany County 2019) (finding that the balance of equities did not favor individuals challenging vaccine mandate where injunction would place individuals "at increased risk of contracting diseases which, as history shows, can result in life-long disabilities or death").

---

[2] To be clear, **no one** in New York has had a religious exemption under § 2164 since 2019, see generally F.F. v. N.Y., 194 A.D.3d 80, 83 (N.Y. App. Div. 3d Dep't 2021), so it simply cannot be said that Plaintiffs face irreparable harm on this basis.

[3] Though Plaintiffs may dispute the efficacy of vaccines in general, such contentions are not only irrelevant to the issues presented in this application and suit, but are also not properly made by Plaintiffs to begin with. Bellatoni v. Lamont, No. 23-656, 2023 U.S. App. LEXIS 34153, at *3 (2d Cir. Dec. 26, 2023) ("We have held [] that weighing scientific evidence and the effectiveness of vaccines is the role of state policymakers, not Plaintiffs.").

   While these points—especially when combined with the arguments in DE 7 about the complete and utter lack of merit to Plaintiffs' claims, including this Court's inability to disregard a myriad number of other controlling, on-point decisions from the Second Circuit—should be sufficient to dispose of the instant application for a TRO and/or PI, should the Court wish to hear further argument from Commissioner McDonald, the undersigned will make himself available at the Court's convenience either virtually or in-person. Alternatively, given the complete lack of exigency or imminent irreparable harm, the undersigned would be happy to submit briefing on all of the questions presented here for the Court's reasoned consideration.[4]

   Regardless, however, Defendant thanks the Court for its consideration of this letter, and looks forward to the resolution of this action.

                       Respectfully,

                        *Robert E. Morelli*

cc:  Counsel for All Parties Via ECF      Assistant Attorney General

---

[4] Commissioner McDonald also notes that in <u>Miller</u>, the Second Circuit set a February 11, 2026 deadline for the simultaneous submission of supplemental briefing from the parties concerning <u>Mahmoud's</u> impact on § 2164. <u>See</u> <u>Miller</u>, Case No. 24-681, DE 89 (Jan. 15, 2026).