# THE GIBSON LAW FIRM, PLLC

SUJATA S. GIBSON, ESQ.
120 E Buffalo Street, Suite 2
Ithaca, New York 14850

March 9, 2026

**VIA ECF**
Hon. Joan M. Azrack
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

> Re: *Children's Health Defense, et al v. McDonald.* Dkt. 2:25-cv-06877
> Intervening Supreme Court Case Law and Facts – Preliminary Injunction Motion

Dear Judge Azrack,

Plaintiffs respectfully submit this letter to notify the Court of (1) intervening Supreme Court authority and (2) a recent factual development relevant to Plaintiffs' pending motion for a preliminary injunction. (ECF No. 11.) A copy of the Supreme Court's decision in *Mirabelli v. Bonta*, No. 25A810, 607 U.S. ___ (Mar. 2, 2026), is attached for the Court's convenience.

## 1. Intervening Supreme Court Authority

On March 2, 2026, the Supreme Court issued a per curiam decision in *Mirabelli v. Bonta*, addressing constitutional claims brought by parents challenging California policies affecting parental knowledge of and involvement in their children's gender identity decisions at school.

The case arose after the district court granted summary judgment for the plaintiffs and entered a permanent injunction. The Ninth Circuit stayed that injunction pending appeal. The Supreme Court vacated the Ninth Circuit's stay as to the parent plaintiffs, concluding that the parents were likely to succeed on the merits of their constitutional claims under both the First and Fourteenth Amendments.

The Court's decision directly addresses several arguments raised in Defendant's opposition, including the scope of *Mahmoud v. Taylor*, the applicability of strict scrutiny to burdens on parental religious exercise under the First and Fourteenth Amendment and irreparable harm.

### Free Exercise

Clarifying the framework articulated in *Wisconsin v. Yoder* and reaffirmed in *Mahmoud v. Taylor*, the Court held that strict scrutiny applies broadly under the Free Exercise Clause where school-based policies "substantially interfere with the 'right of parents to guide the religious development of their children.'" The Court explained that such interference "impos[es] the kind of burden on religious exercise that *Yoder* found unacceptable." Applying strict scrutiny, the Court

further held that the policies at issue were unlikely to survive because the State's asserted safety interests could be addressed through less restrictive means, including policies that allow religious accommodation.

In reaching the conclusion that strict scrutiny applies, the Court rejected the Ninth Circuit's interpretation of *Mahmoud* as "a narrow decision focused on uniquely coercive 'curricular requirements.'" The Supreme Court criticized that approach, noting that the Ninth Circuit had "relied on a not-precedential Sixth Circuit decision and brushed aside *Mahmoud*."

This point bears directly on Defendant's opposition here. Defendant relied on the Ninth Circuit's now-vacated decision in *Mirabelli* and the same "not-precedential" Sixth Circuit's decision in *Doe No. 1 v. Bethel Local School District Board of Education* to argue that *Mahmoud* should be interpreted narrowly and confined to uniquely coercive curricular contexts. (Def. Mem. at 27.) The Supreme Court has now rejected that interpretation and reaffirmed *Mahmoud's* broad holding that policies substantially interfering with parents' ability to guide the religious upbringing of their children trigger strict scrutiny under the Free Exercise Clause.

### Substantive Due Process

The Supreme Court also held that the parents' Fourteenth Amendment due process claim was independently likely to succeed on the merits. The Court reiterated that parental rights are fundamental and that "parents—not the State—have primary authority with respect to 'the upbringing and education of children,'" citing *Pierce v. Society of Sisters* and related precedent. The Court further explained that this right includes the ability to participate in significant decisions affecting a child's mental health and development.

Applying those principles, the Court concluded that the challenged policies likely violated parents' rights because they concealed information about a child's condition and facilitated consequential decisions affecting the child while excluding parents from participation.

The Court further observed that although protecting children is "the overriding equity," parental involvement advances that interest by "guaranteeing fit parents a role in some of the most consequential decisions in their children's lives." The Court explained that states remain able to address genuine safety concerns through existing child-protection laws and other targeted measures.

### Irreparable Harm

Finally, the Court reiterated that the denial of constitutional rights during ongoing litigation constitutes irreparable harm, explaining that "[t]he denial of plaintiffs' constitutional rights during the potentially protracted appellate process constitutes irreparable harm," citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020).

Plaintiffs respectfully submit this authority because it directly addresses the interpretation of *Mahmoud* relied upon in Defendant's opposition and clarifies the Supreme Court's view of the applicable Free Exercise and parental-rights framework and irreparable harm standard.

### 2. Factual Update

Plaintiffs also wish to inform the Court of a recent factual development concerning Plaintiff Raphael Goe.

On March 5, 2026, Raphael's mother, Plaintiff Gina Goe, forwarded to undersigned counsel a letter from the New York City Department of Education stating that Raphael has been granted a medical exemption from vaccination through December 31, 2026. The letter indicates that the request was reviewed by a physician with the New York City Department of Health and Mental Hygiene's Office of School Health and approved based on documentation from Raphael's treating physician, Dr. John Thomas.

Notably, the letter submitted by Dr. Thomas is substantively identical to the documentation that the New York State Department of Health reviewed and denied during the prior school year.

Although this exemption provides temporary relief for Raphael, it remains subject to rescission. Indeed, last school year the New York City Department of Health revoked Raphael's substantively identical medical exemption in April 2025, resulting in his traumatic removal from school partway through the semester. (Compl. ¶ 72.)

The fact that the same entity has now again granted the exemption further illustrates the discretionary nature of the exemption process described in Plaintiffs' briefing, which is relevant to the general applicability of the policies. Plaintiffs therefore provide this update so that the Court has the most current factual record, while respectfully submitting that this development does not resolve the issues presented in the pending motion.

Respectfully submitted,

/s/ *Sujata S. Gibson*

Sujata Gibson, Esq.

CC:    All counsel via ECF